Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. I'm going to call our first case of the day, which is cause number 20-10049, Banca Pueyo versus Lone Star Fund, and I'm sure I mispronounced the first name. Um, it looks like the appellant is ready to proceed. Is that Mr. Leatherberry? Yes, your honor. I'm ready. All right. And Ms. Is it she? Yes, that's right, your honor. All right. You ready to proceed? I am. Thank you. All right. Mr. Leatherberry, you may proceed. Thank you, your honor. May it please the court, Tom Leatherberry for the appellants. The district court erred and abused its discretion in declining to reconsider Appellee's application for discovery under section 1782. It considered the statutory factors and the intel factors required by the Supreme Court only ex parte. It made clear that once the subpoenas had been issued ex parte, appellants could not argue for reconsideration of those statutory and discretionary factors under 1782 and that any evidence and argument that appellants had for the court to consider would be considered only under federal rule of civil procedure 45. Had the district court reconsidered the application under section 1782, it should have vacated its ex parte order and quashed the subpoenas served on the appellants. The intel factors weigh strongly in appellant's favor and appellees are not all interested persons under the statute in each Portuguese proceeding for which they seek discovery. The district court order should be reversed and the cause remanded with instructions to deny Appellee's application and further instructions to quash the subpoenas. Mr. Leatherberry, I want to start off asking you some about jurisdiction. Yes, your honor. And the other side is arguing we need to review this under the framework for the collateral order doctrine. And you seem to be arguing we just treat it as a general finality question, but it seems to me the parties almost have the opposite framework they should be arguing from their perspective. I mean, if it's not a, if you're under a finality inquiry, uh, I mean, maybe you went into collateral order. We can talk about that, but under finality, how is this a final resolution of the matter? When after the court granted the application for the 1782, it, it allowed you to file this other motion of quash. You had a hearing. And then just recently the magistrate rules on that. So, I mean, how is this decision from 2019 final? If that's the, if that's the standard. Your honor, that's why we argued under both the finality standard. And we also addressed the collateral order doctrine when, um, when Applebee's raised that in their motion to dismiss, which was filed gosh, the same day as our opening brief was filed about two and a half months after the notice of appeal had been on file. Um, let me, let me address your honors question. Uh, we were usually, let me interrupt you, but usually finality, the court court's done, there's a final judgment that the coat, the case is closed in the district court. I mean, you know, usually finality is not hard to decide. So how is this, how is this not final or how is this fun? Are you arguing? It is fun. How is it final? When all those things, like a final judgment in the matter being closed in an app. Right. Your honor. And, and, and, and that's, that's why we, uh, we embrace the collateral order doctrine as well. I think your honor is, is, is, is, is right on point. We need to address both. We started out with 1291, but, but we address the collateral order doctrine because that was the framework used in Texas Keystone. And I think under Texas Keystone, the district court's order of December 19th, in which it refused to consider, uh, to reconsider the 1782 factors, both the statutory factors and the, uh, discretionary factors finally concluded for the first prong of the collateral order doctrine finally concluded and finally determined or conclusively determined, uh, an issue in the case. Um, we certainly acknowledge that there are inconsistent precedents in this, in this area. And we were forthright. We think in our notice of appeal from our notice of appeal on forward to let the court decide what may be an open question in this circuit. Let me talk just a little bit about, um, about, uh, jurisdiction. So I've talked about the conclusive determination. I think that is the real key to the collateral order doctrines application in this situation, because I think under the Texas Keystone framework, we meet criteria two and three that the decision that has been conclusively determined is separate from the merits of the case. And it's effectively unreviewable at the end of the case, because this court seemed to make clear in Texas Keystone that we were talking, when we talk about this case, we were talking about the foreign proceedings. And in this case, your honor, out of an abundance of caution, we appealed, uh, the, uh, I think there are strong public policy arguments, uh, to support an immediate appeal of the district courts. Uh, let me ask on whether it's conclusive or not. One of the issues, one of the issues you briefed is this extra territoriality question, which is there's case law out there that's inconsistent around the country. It's an important, difficult issue. Um, but then as I read the recent ruling that provided notice of, which we appreciate, um, from the magistrate judge, basically the ex, she resolved a lot of that by saying you only have to, and correct me if I'm wrong, you're more familiar with the order than I am. But she, I thought she basically said, if it's not in your possession right now, you don't have to reach out to your affiliates and go grab these documents. And so, I mean, to me, that highlights that it, it wasn't conclusively determined because now you've gotten more relief on that extra territoriality question. I certainly understand the court's point, but, uh, our argument is that the 1782 determination should be a separate inquiry that's conclusively determined from the inquiry under federal rule of civil procedure 45 because the 17, if the court, uh, or as the district court did funnel us into rule 45, uh, as, as a result of its failure to reconsider its ex parte grant of the application for discovery, you effectively preterm it as the magistrate said, uh, all the statutory factors of 1782 and you, you preterm it three of the four discretionary factors under Intel, plus perhaps extra territoriality. So, um, I think that's why they're really strong. Counsel, you objected to the 1782 on grounds that it was improperly issued. But one of the objections was also that it was ex parte was applied for ex parte. Is that correct? Yes, your honor. What is the best case you have that the district court could not have considered it on an ex parte basis before we get to the merits of whether it should or should not have been granted? Certainly, your honor. We acknowledge that 1782 applications are granted ex parte. There are, there are a number of different cases where 1782 applications have been granted ex parte. In this case, there was no reason to grant it ex parte, uh, because the defendant's addresses were known. They were in the district. They were, there was no evidence they were going to flee. There was no immediacy to the request. The district court took about a month to, uh, uh, to resolve the ex parte application and to compound the secrecy, your honor, the ex parte, all the ex parte documents were filed under seal. So there was no public record where the, where the respondents, the appellants could get notice of that pending application and make their 1782 arguments, uh, to the district court. The case I would point the court to, uh, is a case we cited in our brief. Uh, it's a district court case, uh, from the Northern district of California in 2006 called Microsoft in Ray Microsoft. And what that case explains your honor is that it's always the best practice when, when an order is granted ex parte to reconsider maintaining the burdens on the party that bore the burden, uh, during the initial 1782 application and not flipping the burden to a rule 45 burden. On the other cases that you mentioned, including Microsoft, but the others that talk about ex parte grants of the application in those cases, was there an attempt successful or otherwise to revisit the application process once it became known, which is why I'm sorry, your honor, I missed that last one. I understand it. That's what you're asking the court to do here initially is to go back to the 1782 application and determine whether it was providently granted. Yes, your honor. And I will, I will tell the court that, uh, the cases are not uniform about how that reconsideration should, should take place. There are some cases, including the three that were relied upon by the, uh, by, by chief judge Lynn here, uh, that funnel everything else after the grant of the application into rule 45. But what we suggest to the court and urge the court is that that certainly is not the best practice because there are strong public policy reasons why the district court should be performing a gatekeeping function under 1782. And if the court, uh, foregoes any adversarial, uh, consideration of the statutory and discretionary factors under 1782, then procedural rights, procedural rights have been lost. And that's one reason why we urge the court that a bright line rule that allows the appeal of a denial of a motion to reconsider a 1782 application, that that order of denial should be appealable because it would give certainty to the, to the litigants. It would give certainty to the district courts and it would focus the district courts on the procedural rights that are being trampled, uh, when district courts do not, um, reconsider the, the statutory and the intel factors, uh, in light of the evidence and the arguments made by the, uh, party from whom the discovery has been requested. So that's, I want to go back to that extraterritorial, territoriality question. Um, are you, so now, as I understand, it's been resolved basically in your favor, are you saying we still need to address it in this appeal? If we agree with you that we have jurisdiction over the earlier order, I mean, it just seems that's, that's an advisory hypothetical opinion. If you're not actually being required to produce anything overseas. Well, your honor, I understand. I mean, our, our point is that we shouldn't have gotten to the rule 45 analysis because if the district court had looked at the 1782 statutory and discretionary factors, the intel factors on reconsideration, after we filed our evidence and made our arguments that we would have obtained at least the same, if not more relief, uh, at that point, because we strongly urge the court that, uh, the relief that we were entitled to based on our showing we made on 1782 was that the application should not have been granted. It should have been denied. And that any ex parte order granting, uh, the application, uh, should have been vacated and the subpoena should have been quashed. So it really, it really does support our argument. I think your honor for letting, uh, these denials of reconsideration be appealed so that the district court will look at those factors under the statute and under intel. And so that this court can look at those statutes before the U S courts are involved in supervising discovery under federal rule of civil procedure, 45. Um, what's your best jurisdiction? I'll go, go ahead. Judge Graves. I've asked him. I was just going to say, so are you saying you don't need a ruling for your case, but we need to make it for other cases in the future. Is that what you're saying? Well, your honor, um, I think, I think the court could, I mean, uh, I think the court could and should reverse the district courts order of January 19th and it's our December 19th, 2019, apologize and remand with instructions to, uh, to dismiss or to not deny the application under 1782 and to quash the subpoena. So I think we are not asking for an advisory opinion. We're asking for, for more relief and the relief we should have gotten under 1782 before we even got to rule 45. If that, if that makes sense, your honor, I guess it does. So you're saying as a practical matter, there is more that you will get if we make that ruling than what you've gotten already. Yes, your honor, because the Apple ease did not meet their burden to prove one of the statutory factors that's required under 1782. That's the interested person factor. Uh, you know, what you have is a conglomerate of, uh, parties, some of whom are in one proceeding, some of whom are in two proceedings, some of whom are in no, no proceeding, uh, overseas in Portugal. And you also, if you look at the Intel factors, although those are discretionary factors, they are factors that a court must consider and exercise its discretion, uh, in ruling on the 1782 application, all four Intel factors favor the appellants here, your honor. Uh, we have argued that, uh, this proof is largely within the Portuguese reach that the information is largely within the reach of the Portuguese tribunals, that this is an attempt to circumvent Portuguese proof gathering restrictions, that Portugal is not receptive to, uh, this type of discovery. And we've already discussed the undue burden, which under 1782, doesn't just lead to modifying the subpoena. It might lead not to denying the application and not issuing the subpoena. All right. Thank you, Mr. Leatherberry. Thank you, your honors. Ms. Shee. Good afternoon, your honors. May it please the court, Kathleen Shee of Quinn Emanuel for the petitioner's appellees. Your honors, the dispositive issue for this court is jurisdiction because this appeal is plainly premature. Essentially respondents are making the extraordinary claim that this, the district court's decision simply to allow a subpoena to issue should be immediately appealable as a matter of right. And before the district court has made any determination on whether it is going to enforce that subpoena. Now, nothing in section 1782 or any of the case law says this. In fact, this court's precedent along with that of every other proceedings only after the district court has reached a final and conclusive determination regarding enforcement. None of respondents' cases are to the contrary. All involved a final determination of the district court. In some, the district court had denied the 1782 application. In others, it had reached a final and conclusive determination regarding what it was going to enforce. In certain of those cases, the district court retained oversight over further proceedings regarding compliance with the court's order. But in each and every case, the substance of the court's order was fully resolved. And here, as we've noted, the district court proceedings are ongoing as evidenced by the magistrate judge's report and recommendation issued just last week. Now, as a legal matter, finding jurisdiction over this appeal would be contrary to both section 1291 and the collateral order doctrine, both of which require finality and both of which evidence this policy against hearing piecemeal appeals. And finding that the mere issuance of a subpoena was immediately appealable would ironically accord these respondents, who were third-party subpoena targets, greater rights than actual defendants in federal court. For example, if the defendant in a federal court loses a meritorious motion to dismiss, they can't appeal until summary judgment, discovery, summary judgment, possibly trial, and then final judgment is entered. Now, it bears emphasis here, because I think it's gotten lost in a lot of this, that respondents aren't being, they're not liable or facing liability for anything in these proceedings. Petitioners are simply asking for documents and testimony relevant to proceedings in a foreign country to which respondents aren't even a party. Ms. Shee, when, in your view, would this case be right for an appeal? When the district court has reached a final conclusion, when it's reached its final order, adopting the magistrate judge's important recommendations to the extent it sees fit, when that order is concluded and the district court has reached its final scope of discovery, at that point, this case would be appealable. And then, in your view, they'd be able to go all the way back and appeal everything back to the beginning? Absolutely. And that's what happened in Ecuadorian plaintiffs. Ecuadorian plaintiffs concerned whether the subpoena had properly issued. It was all about 1782. But again, that appeal did not come up until the district court had ordered a foundational deposition. The opposite would also be true to the extent that if your application or your client's application had been denied, that would immediately be appealable. Do I have that correct? Absolutely, yes. It's whenever the end of the road is for the district court's decision-making process. As a practical matter, asserting jurisdiction over this appeal would obviously set a difficult precedent. It would mean that every time respondents in the 1782 proceeding received a subpoena they didn't like, they could immediately appeal it. This court, if it concluded that the subpoena had properly issued, would remand for further proceedings. And then the respondent could file yet another appeal if it disagreed with the district court's final determination regarding enforcement. And again, the inefficiency of this approach would be compounded by the fact that the district court plays a critical role in narrowing the scope of discovery, as you're seeing right now with what the magistrate judge is doing. She has narrowed certain of petitioners' requests, quashed others, and as your honors have noted, narrowed the issues that are even live before this court if that order is passed. I guess you might end up wanting to appeal that, right? I mean, you haven't had to decide that yet, but we could have both sides unhappy with parts of the recent ruling. That's exactly right. And again, I think that it's another reason to wait until the district court has come to a final resting place, because you may in fact have cross appeals of whatever the final result would be. Now, if this court is inclined to consider the merits, and frankly, I think that the merits are quite good for petitioners' appellees, I think we should prevail, and there's some part of me that wants an affirmative ruling on that right now. But I think that the best, the proper course of action is to dismiss for lack of jurisdiction. But if this court is inclined to consider on the merits, then the district court's decision should be confirmed because it was clearly correct. First, there was nothing inappropriate about the fact that the court was acquitted of these proceedings, and it's not because of any secrecy issue. I think if you look at the Texas Keystone case, it gives you the best explanation of why that happens. These proceedings tend to go in two phases. In the first phase, Texas Keystone explains that 1782 does not establish the standard for discovery. There is a first phase that is a threshold determination or screen as to whether the federal court should allow foreign litigants to enjoy discovery in U.S. courts under the federal rules of civil procedure. It's really about whether this is a good use of federal court resources. And if you look at the statutory and discretionary factors under Intel, they are all targeted to that issue. They ask, is the petitioner someone who's going to be able to use this discovery? Is the respondent someone over which the court will have jurisdiction to enforce? What kind of proceeding is it? If you look at the Intel factors, they ask, what will the foreign proceedings permit this discovery? Will they receive it well? Will this even be a useful endeavor? And once that process is completed, once that screen is fulfilled, then the subpoenas can issue, and then the federal rules of civil procedure take over on the discovery question. So the reason a lot of these proceed ex parte is simply because that first inquiry is really about the federal court and whether it's an intelligent use of federal court resources to even be getting into this. And on the due process point, this is entirely consistent with the way discovery proceeds in other federal civil cases. In a regular federal civil case, the parties have their Rule 26-F conference, and then they can freely issue subpoenas. The subpoena target has no say in whether that subpoena goes out the door. And of course, the subpoena target can redeem its rights or enforce its rights under Rule 45. So there's been no burden shifting here. This is entirely consistent with the way federal subpoena practice works. Now, even if this court concluded that there was something improper about ex parte consideration, that was harmless because the factors were clearly fulfilled. On the interested persons factor, which is the only statutory factor the respondents challenge, that is the only factor that this court reviews de novo. And on the interested persons factor, nine of the petitioners are actual parties to the Portuguese proceedings. Another four are agents for those parties. And it's very clear under the relevant case law that we cited in our briefing that agents are interested persons for purposes of the statute. And the remaining factors, the intel factors, are reviewed only for abuse of discretion. And we would respectfully submit that the district court properly exercised its discretion in this foreign proceedings and asks whether there is an apparent need for discovery over and above what's already available in the foreign forum. And here, the district court correctly observed that neither the respondents nor any of their affiliates are parties to the Portuguese proceedings. So the petitioners can't get party discovery from them there. In any event, some of the documents petitioners are seeking from respondents are internal to respondents. So there would be no way to get discovery from the other parties to the Portuguese in those proceedings regarding the issues we're seeking in the 1782 proceeding. Moreover, there's no exhaustion requirement. So even to the extent that there is overlap between what we are seeking in the 1782 proceeding and what is going on in the Portuguese proceedings, this court held in Ecuadorian plaintiffs that identical discovery requests can proceed in tandem. So there's really no issue on that first factor. Regarding the second factor, whether the foreign tribunal would be receptive to the assistance, this court was very clear in the Ecuadorian plaintiffs case that it will not embark upon speculative forays into legal territories unfamiliar to federal judges. And the foreign forum is presumed to be receptive absent authoritative proof that it would reject the evidence. And authoritative proof is a very high bar. It's a judicial, executive, or legislative declaration that clearly demonstrates lack of receptiveness. Declaration of a foreign law expert is not authoritative proof, and that is all respondents have provided. And in each of the cases respondents have relied on, the foreign tribunal itself provided written notice of lack of receptiveness. That has not happened here. The respondents have also pointed to Portugal's Article 23 reservation, but that again is not authoritative proof. That reservation simply says that Portugal will not authorize foreign parties to conduct broad discovery in Portugal. It says nothing about whether Portugal would be receptive to the fruits of American-style discovery if it had used some documents relevant to a Portuguese proceeding. And again, whether a document would be discoverable in a foreign country is not the test. The late Justice Ginsburg observed in Intel that a foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions. Such reasons do not necessarily signal objection to aid from the United States federal courts. On the third factor, the district court correctly found that there was no evidence that petitioners were attempting to circumvent Portuguese proof gathering restrictions. The only evidence respondents have cited is that the parties themselves and the Portuguese proceedings have made productions that are less than even what Portuguese courts ordered. There is no evidence the Portuguese tribunal has any restriction against further discovery occurring. And as the fourth Intel factor, in granting the 1782 application to serve subpoenas, that screening process, the district court found that as a facial matter, the subpoena was not overly burdensome. And of course it said again and again that under Rule 45 it would gladly entertain any further evidence and argument regarding burden. And again, that is precisely what has happened with the magistrate judge's recent report and recommendation. Ms. Sheehy, do you have to prevail under all four of those factors? And what happens if two of them go in your favor and we think two actually go in favor of the other side? How does that work? No, there is no requirement that all four factors be met. Again, there are guideposts only to inform the district court's discretion. There is not even a burden shifting analysis. It is simply considerations. I think the Intel phrased it that bear consideration in guiding the district court's discretion. So if we thought it got one or two or more of them wrong, would we have to send it back for, I mean, it seems like the district court should do that weighing. It's just a discretionary call. Would that be the right path? Absolutely. And that's why the whole decision is viewed in this abuse of discretion framework. And it's not just one factor, but under the totality of the factors was this abuse of discretion to allow this to happen. Are there cases, I didn't really see cases where say the district court says, oh yeah, they are just trying an end run around the forum proceeding, which is one of the factors. And then the court says, but I'm still going to allow the discovery. Are there cases like that? I have not seen that. And I think that is one issue that the court need not trouble itself with here because there has been absolutely no indication that there is any restriction on what we're attempting to do in Portugal. On the extraterritoriality point, this court should reject the respondent's request that there is some categorical bar to discovering documents located abroad. The plain language of 1782 contains no such restriction. As we noted in our briefing, no circuit court that has been confronted with the issue has found such a categorical bar. And with respect, this court should not be the first. In this digital age, whether a document is located abroad is a fact intensive question. Sitting here in Texas, it could be much easier for me to access a document on a Swedish server with the press of a button than paradoxically could for me to go down the street to a warehouse and get a hard copy document. It's an incredibly fact intensive determination that really should be within the district court's discretion in the first instance to weigh. And again, that's precisely what the magistrate judge has done in this report and recommendation, considering the evidence presented by respondents and essentially giving them what they wanted, ruling that their foreign affiliates would not be required to produce documents that they were holding. Now, we disagree with the breadth of that ruling and we may be filing objections. But again, it demonstrates that the district court is conducting precisely the kind of factual balancing that this issue would require. So for all these reasons, we would respectfully submit the appropriate course is to dismiss for lack of jurisdiction and let the district court finish its work, narrow the issues, and come to a final determination. Barring that, the district court's conclusion that the 1782 factors were satisfied, was correct, and should be affirmed on appeal. Thank you. And I can give back the rest of my time if there are no questions. All right. Thank you, counsel. Rebuttal. Yes, Your Honor. May it please the court. Judge Costa, I think you started to ask during my initial time, what's your best case on jurisdiction? Or I may have heard some of that. I would really commend to the court the very broad language in the Seventh Circuit's case in Jerez Calcer from 2018, I believe. The Seventh Circuit's reliance on its earlier decision in Kestrel Cole and on the Tenth Circuit decision in Enri, Republic of Ecuador. Those are some of the cases that we cited in our briefs, or even in our notice of appeal, as cases in which there were some ongoing proceedings, proceedings either ongoing or contemplated in the district court about further scope of discovery under a 1782 application. And of course, the Seventh Circuit in Jerez Calcer held that the appellant had missed two appellate deadlines by failing to appeal two earlier decisions of the district court in connection with that 1782 discovery. I think gatekeeping and the federal court as gatekeeper under 1782 is equally important as the narrowing function that counsel spoke about. I think this is a somewhat phased determination, and that's why a bright line rule that allows a party from whom discovery is sought to appeal the denial of a motion to reconsider the ex parte grant of a 1782 application would be good for litigants, and it would focus the courts on the procedures that should be used in those situations. The court asked, when will this be ripe for appeal? Well, under the magistrate's order that came out last Monday, the court will not be finished with its work even after it rules on objections to the magistrate's order because the magistrate left open the opportunity to raise privilege or confidential business information, objections, trade secret objections to additional analyses that might be within the subject of discovery. So it puts appellants like my clients in a very awkward situation. When do you appeal? Do you wait? Do you go up after the denial of the motion for reconsideration? Do you go up after the denial of rule 45 objections, or do you have to wait even until these other objections are ruled on before you go up? It's a very difficult situation, and a bright line rule would fix that. We talked a little bit about the cases that did not reconsider applications under 1782, but like the district court, funneled everything to rule 45. We did deal with those cases in our briefs, particularly in the reply brief. One is an unpublished Second Circuit case on which the district court relied, where the person from whom discovery was sought was going to flee the jurisdiction, and the others are similarly not well-reasoned and should not be followed. Rather, a motion to reconsider should be given full adversarial consideration. On the interested persons question, the statutory factor, we submit that the affidavits about the rights that the non-participants in any Portuguese proceeding have are wholly conclusory, and we pointed that out in our motion for reconsideration to the court. That's the motion that the court did not analyze, did not reconsider. Under Intel, parties need to have significant procedural rights, and the four non-participants here don't argue that they have the right to appeal any adverse determinations in the Portuguese proceedings. They just say they have the right to control some evidence presented by other parties in those proceedings without any explanation of what control means or what the relationship is, so agency simply isn't enough. We'll rely on our briefs for the other responses to the Intel factors, but suggest that the Intel factors all militate in favor of the appellants, and we very much appreciate the court's time today. It's nice to be back in court. All right. Thank you, counsel. Thanks to both of you, and you are free to leave.